BP PRODUCTS NORTH AMERICA INC.,  )
                                 )
    Plaintiff,             )
                                 )
                                 )
v.                               )    No. 2:11-cv-2162-JPM-cgc
                                 )
PREMIER OIL COMPANY, LLC;        )
POC REAL ESTATE COMPANY, LLC;    )
M. KYLE RICE;                    )
and RICHARD K. RICE,             )
                                 )
    Defendants.            )

**ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER**
**AND**
**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO**
**DEFENDANTS PREMIER OIL COMPANY, LLC, and POC REAL ESTATE**
**COMPANY, LLC**

Before the Court is Plaintiff BP Products North America Inc.'s ("Plaintiff" or "BP") Motion to Reconsider Order Denying BP's Motion for Summary Judgment as Moot as to Defendants Premier Oil Company, LLC, ("Premier Oil") and POC Real Estate Company, LLC ("POC Real Estate"), filed February 11, 2013. (ECF No. 75.) For the following reasons, the Motion is GRANTED.

This case concerns the alleged breach of certain contracts Defendant Premier Oil entered into with Plaintiff BP and certain guarantees related to those contracts signed by Defendant POC Real Estate and individual Defendants M. Kyle Rice and Richard

K. Rice.  (See ECF No. 1.)  BP alleges that Premier Oil breached

its Branded Jobber Contract, under which Premier Oil agreed to

buy BP-branded petroleum products and resell them at Premier

Oil's BP-branded stations or to other independent dealers.  (Id.

¶¶ 10-17.)  BP also alleges that Premier Oil breached two other

incentive contracts, namely the Jobber Outlet Incentive Program

("JOIP") Agreement and the CommLinx Agreement, under which BP

gave Premier Oil "incentive funds" to update and improve its

branded stations.  (Id. ¶¶ 18-32.)  BP claims Premier Oil failed

to reimburse BP the funds it had provided under those

Agreements.  (Id.)  BP alleges that it ended its relationship

with Premier Oil and demanded payment of approximately $1.2

million on the various BP-Premier Oil contracts.  (Id. ¶ 41.)

BP alleges that it received no payment from Premier Oil by the

established deadline, so it demanded payment from all Defendants

on September 1, 2010.  (Id. ¶ 47.)  As of the filing of the

Complaint, BP claims it has not been paid.  (Id. ¶ 48.)

     In its Complaint, BP also alleges that Defendants POC Real

Estate, Richard K. Rice, and M. Kyle Rice each signed unlimited

guarantees on the agreements covering "all existing and future

indebtedness of Premier Oil to BP."  (Id. ¶¶ 33-40.)  BP seeks

an "action on the guarantee of credit against Defendants Richard

K. Rice, M. Kyle Rice, and POC Real Estate Company" seeking

damages in the amount of $1,182,509.83, plus finance charges,

interest, attorneys' fees, and legal expenses.  (<u>Id.</u> Count V,
¶¶ 74-78.)

On August 8, 2012, Defendants' attorney Joseph Koury
("Koury") filed a Motion to Withdraw as attorney for all
Defendants.  (ECF No. 27.)  The Court granted Koury's Motion to
Withdraw on August 14, 2012.  (ECF No. 28.)

Plaintiff BP filed its Motion for Summary Judgment and
Statement of Facts in support of its Motion (ECF No. 29; ECF No.
30) on September 13, 2012, against all four Defendants.  New
counsel for individual Defendants Richard K. Rice and M. Kyle
Rice filed notices of appearance with the Court on October 2,
2012 (ECF No. 31; ECF No. 32), and October 3, 2012 (ECF No. 33;
ECF No. 34).  As of the date of this Order, no counsel has
appeared for Premier Oil or POC Real Estate since Koury's
withdrawal.

The Court granted Defendants Richard K. Rice and M. Kyle
Rice's Motions to extend the deadline to respond to BP's Motion
for Summary Judgment by sixty days on October 15, 2012.  (ECF
No. 38.)  Defendants Premier Oil and POC Real Estate did not
request an extension of time to respond, nor did they respond to
BP's Motion for Summary Judgment by the October 15, 2012,
deadline.

Defendants M. Kyle Rice and Richard K. Rice responded to
BP's Motion for Summary Judgment on December 14, 2012 (ECF No.

45; ECF No. 46). Before BP's reply to their responses was due, however, the Court granted Richard K. Rice leave to amend the Defendants' Answer in his individual capacity and denied as moot BP's pending Motion for Summary Judgment as to all Defendants. (ECF No. 48.) Regardless of the Court granting Richard K. Rice leave to file an Amended Answer, Premier Oil and POC Real Estate did not respond to BP's Motion for Summary Judgment in the time allotted under Local Rule 56.1(b) before the Court denied the Motion as moot.

As a result, BP filed the instant Motion on February 11, 2013, requesting that (1) the Court reconsider its Order denying BP's Motion for Summary Judgment as moot to all Defendants; and (2) the Court enter summary judgment against Premier Oil and POC Real Estate. (ECF No. 75 at 3.) Additionally, BP requests "that the summary judgment against Premier Oil and POC be made final, as there is no just reason for delay." (Id.) The Defendants Premier Oil and POC Real Estate did not respond to BP's Motion to Reconsider. The Court will address each issue in turn.

**I.  Motion to Reconsider**

"Although the Federal Rules of Civil Procedure do not specifically recognize motions to reconsider, Local Rule 7.3 provides for motions for revision of interlocutory orders." Liberty Legal Found. v. Democratic Nat'l Comm., No. 12-2143-STA,

2012 WL 6026496, at *2-3 (W.D. Tenn. Dec. 4, 2012).  Pursuant to

Local Rule 7.3, "any party may move, pursuant to [Federal Rule

of Civil Procedure] 54(b), for the revision of any interlocutory

order before the entry of judgment."  Id. at *2 (quoting LR

7.3(a)) (internal quotation marks omitted).[1]  Local Rule 7.3(b)

requires the moving party to show specifically

> (1) a material difference in fact or law from that
> which was presented to the Court before entry of the
> interlocutory order for which revision is sought, and
> that in the exercise of reasonable diligence the party
> applying for revision did not know such fact or law at
> the time of the interlocutory order; or (2) the
> occurrence of new material facts or a change of law
> occurring after the time of such order; or (3) a
> manifest failure by the Court to consider material
> facts or dispositive legal arguments that were
> presented to the Court before such interlocutory
> order.

LR 7.3(b).

BP argues that, under the first subpart of Local Rule

7.3(b), there is a "material difference in fact or law" that was

not presented to the Court and that it exercised reasonable

diligence in making this known to the Court.  (ECF No. 75 at 3.)

BP states that it "never had the opportunity to present the

Court with law or facts relating to Defendants Premier Oil's and

POC [Real Estate's] failure to respond to BP's Motion for

Summary Judgment,"  and that it was instead "waiting until the

December 14, 2012[,] extended deadline had passed for the Rice

---

[1] A PDF copy of this Court's Local Rules is available at
http://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

Defendants to respond to BP's Motion for Summary Judgment to be certain that Defendants Premier Oil and POC [Real Estate] would not attempt to respond to BP's Motion for Summary Judgment at that time." (Id.)  BP states that it was unable to present any arguments to the Court related to Premier Oil's and POC Real Estate's failure to file a response because the Court issued its Order denying the Motion as moot before BP's reply was due. (Id.)

The Court agrees with BP and finds that despite BP's diligence, pertinent facts were not presented to the Court regarding BP's Motion for Summary Judgment as it related to Premier Oil's and POC Real Estate's respective failures to respond to the Motion.  The Court finds that BP has met its burden under Local Rule 7.3.  BP's Motion to Reconsider is therefore GRANTED.  Accordingly, the Court will reconsider BP's Motion for Summary Judgment as it relates to Defendants Premier Oil and POC Real Estate.

## II.  Motion for Summary Judgment

### A.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012).  "A fact is 'material' for purposes of

summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012). "A dispute over material facts is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Chapman, 670 F.3d at 680 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp., 477 U.S. at 323). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Id. at 448-49 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"To show that a fact is, or is not, genuinely disputed, both parties are required to either 'cite[] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact.'" Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Fed. R. Civ. P. 56(c)(1)(A); Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'"). The nonmoving party, when confronted with a properly supported motion for summary judgment, "must – by affidavits or as otherwise provided in [Rule 56] - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also Anderson, 477 U.S. at 256-57.

Defendants Premier Oil and POC Real Estate have not responded to Plaintiff's Motion for Summary Judgment or its Statement of Undisputed Facts. Pursuant to Federal Rule of Civil Procedure 56(e),

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed - show that the movant is entitled to it . . . .

Fed. R. Civ. P. 56(e)(3). Further, pursuant to Local Rule 56.1(d), "[f]ailure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d). The Court

therefore finds BP's material facts undisputed for purposes of its Motion for Summary Judgment to the extent they are properly supported under Rule 56(c). See Iqbal v. Pinnacle Airlines, Inc., 802 F. Supp. 2d 909, 914-15 (W.D. Tenn. 2011).

Despite the Defendants failure to respond to BP's Motion for Summary Judgment, the court "is required, at a minimum, to examine the movant's motion for summary judgment to ensure that [it] has discharged [its] burden." Delphi Auto. Sys., LLC v. United Plastics, Inc., 418 F. App'x 374, 381 (6th Cir. 2011) (quoting Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991)) (internal quotation marks omitted). "In considering a motion for summary judgment, [a court] must draw all reasonable inferences in favor of the nonmoving party." Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 730 (6th Cir. 2012) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson, 477 U.S. at 251-52).

### B. Choice of Law

"A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules." Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 823 F. Supp. 2d 786, 801 (W.D. Tenn. 2011). "Tennessee

follows the rule of *lex loci contractus,* meaning that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent . . . ." Id. (quoting Se. Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 672 n.8 (6th Cir. 2006)) (internal quotation marks omitted). There is no dispute that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds the sum of $75,000. Further, there is no dispute that the contracts were executed in the state of Tennessee. As a result, the Court will apply Tennessee law.

**C. Analysis**

BP claims that Premier Oil breached its Branded Jobber Contract, and two incentive agreements, namely its JOIP Agreement and its CommLinx Agreement, causing damages from the breach. Under Tennessee law, a party asserting a claim for breach of contract must show "(1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach." Woodall v. DSI Renal, Inc., No. 11-2590, 2012 WL 1038626, at *6 (W.D. Tenn. Mar. 27, 2012) (citing C&W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007)). The Court will address each contract in turn.

### 1. The Branded Jobber Contract

The following undisputed facts are pertinent to BP's claims against Defendant Premier Oil as to the Branded Jobber Contract. "On or about November 16, 2001, BP entered into a Branded Jobber Contract with Premier Oil," the terms of which stated "BP agreed to sell, and Premier Oil agreed to purchase, branded petroleum products, including, but not limited to, gasoline and diesel fuel, to be resold by Premier Oil at its approved retail stations." (Pl.'s Material Facts, ECF No. 30-1, ¶ 4.) The Branded Jobber Contract was extended twice since 2001, with the last extension covering the period through February 28, 2011. (Id. ¶¶ 5-6.) The Branded Jobber Contract provided that Premier Oil would "pay for all products, open account items[,] and all other items and services via electronic funds transfer," and that all invoices were deemed valid, unless Premier Oil objected in writing within sixty days of receipt. (Id. ¶¶ 7-8.) The contract also provided for finance charges on all amounts not paid on the due date. (Id. ¶ 9.) Between November 4, 2009, and December 13, 2009, Premier Oil received, but did not pay for, BP's petroleum products, which totaled $108,342. (Id. ¶¶ 13-15.) This amount, plus $188.59 "for miscellaneous charges associated with the purchase of petroleum products and the operation of the stations," was due by January 24, 2010. (Id. ¶¶ 16-17.) BP sent letters demanding payment to Premier Oil on

February 4, 2010, February 16, 2010, and September 1, 2010, but
Premier Oil did not pay the invoices.  (Id. ¶¶ 18-19.)  BP did
not receive any written objections to the amounts charged to
Premier Oil, and Premier Oil does not dispute the amounts.  (Id.
¶¶ 20-21.)

Additionally, the contract "contains a provision that
requires Premier Oil to indemnify BP from all losses and
damages, including attorneys' fees, arising from Premier Oil's
breach of the Branded Jobber Contract."  (Id. ¶ 22.)  As of
September 13, 2012, "$57,518.03 in reasonable attorneys' fees
and costs have been incurred to collect the amount owed from
Defendants."  (Id. ¶ 23.)

BP asserts that the undisputed facts show that there is "no
genuine dispute as to any material fact" regarding the three
elements required to show Premier Oil breached the Branded
Jobber Contract, and that it is therefore entitled to judgment
as a matter of law.  (ECF No. 75 at 4.)  To support its
assertion, BP cites the contract documents (ECF Nos. 30-3, 30-
5); the invoices and letters (ECF Nos. 1-26, 1-27, 30-7, 30-9),
and the affidavit of Robert Ross, Senior Credit Analyst for BP
(ECF No. 30-2).

The undisputed facts and the record as a whole indicate
that BP and Premier Oil entered into a valid Branded Jobber
Contract; that Premier Oil breached that contract by not paying

for the delivered petroleum products after demand for payment was made; and that damages to BP in the form of the amounts owed on the invoices were caused by the breach.

The Court finds that BP has satisfied its burden in demonstrating that there is no genuine issue of material fact as to Premier Oil's breach of its Branded Jobber Contract with BP. As a result, BP is entitled to judgment as a matter of law. BP's Motion for Summary Judgment for the claim of breach of contract on the Branded Jobber Contract is GRANTED.

### 2. The Jobber Outlet Incentive Program Agreement

The following facts are pertinent to BP's claims against Defendant Premier Oil as to the JOIP Agreements. BP and Premier Oil entered into JOIP Agreements for the fourteen stations at issue in this lawsuit, containing lump-sum payments for renovations to those stations. (Pl.'s Material Facts, ECF No. 30-1, ¶¶ 24, 29.) "In return for these incentives, Premier Oil agreed to operate the stations as BP-branded stations for ten (10) years after receiving incentives pursuant to the JOIP Contracts." (Id. ¶ 30.) The agreement provided that if the station "ceased operating as a BP-branded facility supplied by Premier Oil," Premier Oil was required to "return the incentive funds provided to Premier Oil on a pro-rated basis for the period that reflected the unperformed portion of the ten-year period." (Id. ¶ 31; see, e.g., ECF No. 1-8 at PageID 55-56.)

"In total, BP provided $2,352,316.83 in incentives to Premier Oil pursuant to the JOIP contracts," which Premier Oil does not dispute. (Pl.'s Material Facts, ECF No. 30-1, ¶¶ 33-34, 41.) Premier Oil then ceased operating as a BP-branded jobber in February of 2010. (Id. ¶ 37.) The total amount owed in unamortized incentive funds is $1,033,351.88. (Id. ¶ 39.) BP sent Premier Oil an invoice for this amount and demanded payment of the invoice on February 5, 2010, and September 1, 2010. (Id. ¶ 40.) Premier Oil has not paid the invoice. (Id. ¶ 42.) "Premier Oil continues to owe a total of $1,033,351.88 for JOIP funds provided to Premier Oil." (Id. ¶ 43.)

BP asserts that the undisputed facts show that there is "no genuine dispute as to any material fact" regarding the three elements required to show Premier Oil breached the JOIP Agreement, and that it is therefore entitled to judgment as a matter of law. (ECF No. 75 at 4.) To support its assertion, BP cites the JOIP Agreement documents (ECF Nos. 30-13 to -25), invoices and letters (ECF Nos. 1-26, 1-27, 30-26), and the affidavit of Robert Ross (ECF No. 30-2).

The undisputed facts and the record as a whole indicate that BP and Premier Oil entered into a valid JOIP Agreement; that BP provided Premier Oil with incentive funds; that Premier Oil de-branded its stations and therefore owed the unamortized incentive funds to BP according to the schedule in the

agreement; that Premier Oil breached the JOIP Agreement by not returning the incentive funds after demand for payment was made; and that damages to BP in the form of the amounts owed on the invoices were caused by the breach.

The Court finds that BP has satisfied its burden in demonstrating that there is no genuine issue of material fact as to Premier Oil's breach of its JOIP Agreement with BP.  As a result, BP is entitled to judgment as a matter of law.  BP's Motion for Summary Judgment for the claim of breach of contract on the JOIP Agreement is GRANTED.

### 3.    The CommLinx Agreement

The following facts are pertinent to BP's claims against Defendant Premier Oil as to the CommLinx Agreement.  Premier Oil entered into a CommLinx Agreement with BP, under which BP provided funds to Premier Oil related to equipment installed at its various stations.  (Pl.'s Material Facts, ECF No. 30-1, ¶ 44; see ECF No. 30 at 9.)  The terms of the agreement state that "[i]n the event that a station receiving funds pursuant to the CommLinx Agreement stopped operation as a BP-branded station within 5 years of the prescribed installation date of the CommLinx equipment, Premier Oil agreed to repay BP the amount provided on an amortized basis."  (Pl.'s Material Facts, ECF No. 30-1, ¶ 45; see ECF No. 30-26 at PageID 450.)  BP provided CommLinx funds to eleven Premier Oil stations in January and

February of 2008. (Pl.'s Material Facts, ECF No. 30-1, ¶ 46.)
Premier Oil acknowledged in writing the total amount of CommLinx
funds BP provided to those stations and the amortization
beginning and ending dates. (Id.; see ECF No. 30-33 at PageID
496-97.) Within two or three years of receiving the CommLinx
funds, all of the stations debranded. (Pl.'s Material Facts,
ECF No. 30-1, ¶ 47.) Under the terms of the agreement, "if the
stations debranded within the second year of receiving the
funds, 80% of the funds were to be returned to BP and if the
stations debranded within the third year of receiving the funds,
60% of the funds were to be returned to BP." (Id. ¶ 48.) In
total, BP provided Premier Oil $52,238.42 in CommLinx funds;
$35,227.36 of that amount remained unamortized at the time
Premier Oil debranded its stations in February 2010. (Id. ¶¶
49-50.) BP sent Premier Oil an invoice and demanded payment on
February 5, 2010, and on September 1, 2012. (Id. ¶ 52.)
Premier Oil does not contest, nor does it have any evidence to
dispute, the charges in the invoice for the CommLinx funds.
(Id. ¶¶ 51, 53.) Premier Oil has not paid, and therefore
continues to owe, $35,227.36 for the CommLinx funds. (Id. ¶¶
54-55.) Additionally, Premier Oil agreed to pay monthly service
fees associated with the agreement, which totaled $5400 at the
time BP's Motion was filed. (Id. ¶¶ 56-57.)

BP asserts that the undisputed facts show that there is "no

genuine dispute as to any material fact" regarding the three
elements required to show Premier Oil breached the CommLinx
Agreement, and that it is therefore entitled to judgment as a
matter of law. (ECF No. 75 at 4.) To support its assertion, BP
cites the CommLinx Agreement documents (ECF No. 30-28), invoices
and letters (ECF Nos. 1-26, 1-27, 30-26), and the affidavit of
Robert Ross (ECF No. 30-2).

The undisputed facts and the record as a whole indicate
that BP and Premier Oil entered into a valid CommLinx, that BP
provided Premier Oil with incentive funds, that Premier Oil de-
branded its stations and therefore owed the unamortized
incentive funds to BP, that Premier Oil breached the CommLinx
Agreement by not returning the incentive funds after demand for
payment was made, and that damages to BP in the form of the
amounts owed on the invoices were caused by the breach.

The Court finds that BP has satisfied its burden in
demonstrating that there is no genuine issue of material fact as
to Premier Oil's breach of its CommLinx Agreement with BP. As a
result, BP is entitled to judgment as a matter of law. BP's
Motion for Summary Judgment for the claim of breach of contract
on the CommLinx Agreement is GRANTED.

In summary, BP has met its burden in demonstrating that
there is no genuine issue of material fact that BP is entitled
to relief based on its breach-of-contract claims. The only

remaining issue is the amount of damages to which BP is
entitled.

**D.  Damages**

"In determining damages in breach of contract actions, 'the
governing principle is to compensate for damages actually
incurred by placing the plaintiff in the position he would have
occupied had the contract been fulfilled in accordance with its
terms.'" Cirzoveto v. AIG Annuity Ins. Co., 625 F. Supp. 2d
623, 627 (W.D. Tenn. 2009) (quoting Safeco Ins. Co. of Am. v.
City of White House, Tennessee, 133 F. Supp. 2d 621, 630 (M.D.
Tenn. 2000) (internal quotation marks omitted)).

Pursuant to the contracts, Premier Oil is obligated to pay
BP for its outstanding invoices related to petroleum products
received under the Branded Jobber Contract, incentive funds
received under the JOIP Agreement, and incentive funds received
under the CommLinx Agreement.  (See ECF No. 1-6; ECF Nos. 1-7 to
-19; ECF No. 1-21.)  The Court finds that reimbursing BP these
funds will put BP in the position it would have occupied had the
contracts been performed according to their terms.

Under the undisputed terms of the Branded Jobber Contract,
Premier Oil is also obligated to pay finance charges assessed
monthly at an annualized rate of 8%.  (Aff. Ross, ECF No. 30-2
¶ 22; ECF No. 1-6 ¶ 4(c).)

Pursuant to Tennessee Code Annotated Section 47-14-123, the

18

Court finds Premier Oil is also required to pay prejudgment interest on the JOIP and CommLinx Agreements as there is no dispute as to the facts underlying BP's claim that Premier Oil has not repaid the incentive funds and the award will "more fully compensate [BP] for the loss of use of its funds." See Scholz v. S.B. Int'l, Inc., 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000) (noting the history of interest, the Tennessee legislature's codification of prejudgment interest awards, and the modern court's move toward awarding prejudgment interest). In Scholz, the Tennessee Court of Appeals noted that prejudgment interest may be inappropriate

> 1) when the party seeking prejudgment interest has been so inexcusably dilatory in pursuing a claim that consideration of a claim based on loss of use of the money would have little weight; 2) when the party seeking prejudgment interest has unreasonably delayed the proceedings after suit was filed; or 3) when the party seeking prejudgment interest has already been otherwise compensated for the lost time value of its money.

Id. (citations omitted); see also Guardsmark (Puerto Rico), LLC v. Miramar Real Estate Mgmt., Inc., 2:08-2317, 2010 WL 625396, at *6 (W.D. Tenn. Feb. 17, 2010) (applying the Scholz factors). In the instant case, the Court finds that prejudgment interest is appropriate as the amount of interest will be easily ascertained, BP has not delayed in filing suit to recover its funds, there is no record of BP having unreasonably delayed the

proceedings since the suit was filed, and BP has not otherwise been compensated for the loss of the use of these funds.

While the maximum rate of prejudgment interest is 10% per annum, Tenn. Code Ann. § 47-14-123, the JOIP and CommLinx Agreements are subject to the terms of Tennessee Code Annotated Section 47-14-103(2), which states that the maximum rate "for all written contracts . . . signed by the party to be charged [is] the applicable formula rate."  Tenn. Code Ann. § 47-14-103(2).  The "applicable formula rate" is defined as

> an annual rate of interest four (4) percentage points above the average prime loan rate (or the average short-term business loan rate, however denominated) for the most recent week for which such an average rate has been published by the board of governors of the Federal Reserve System, or twenty-four percent (24%) per annum, whichever is less.

Tenn. Code Ann. § 47-14-102(7).  It is undisputed that the applicable formula rate in the instant motion is 7.25% for amounts owed on the JOIP and CommLinx Agreements.  (ECF No. 30 at 8, 11.)

"The party seeking damages has the burden of proving them."  BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 229 (Tenn. Ct. App. 2006) (quoting Overstreet v. Shoney's, Inc., 4 S.W. 3d 694, 703 (Tenn. Ct. App. 1999)) (internal quotation marks omitted).  The Court finds that BP has met this burden by providing the signed Affidavit of Robert Ross (Aff. Ross, ECF No. 30-2), along with the accounts receivable spreadsheets (ECF

Nos. 30-6, 30-8, 30-27) and invoices (ECF Nos. 30-7, 30-26) for
the outstanding debts.  BP sets forth the balance owed by
Premier Oil as of the filing of the Motion for Summary Judgment
at $1,182,509.83, not including interest and attorneys' fees.
(Pl.'s Material Facts, ECF No. 30-1, ¶ 58.)

Because neither Defendant Premier Oil nor Defendant POC
Real Estate has provided any evidence contradicting the amount
of damages, the Court finds there is no genuine issue of
material fact as to the amount of damages.  In order to
ascertain the correct amount due – as the previous calculation
of interest was made as of September 14, 2012 – the Court
DIRECTS Plaintiff to file an affidavit no later than May 20,
2013, containing a calculation of the total amount owed,
detailing the principal amount and accrued interest as of the
date of entry of final judgment against Premier Oil.

The Branded Jobber Contract also provides that Premier Oil
will indemnify BP from all losses and damages, including
attorneys' fees, arising from Premier Oil's breach of the
contract.  (ECF No. 30-1 ¶ 22; ECF No. 1-1 ¶ 14.)  "In diversity
cases, attorneys' fees are governed by state law." Hometown
Folks, LLC v. S & B Wilson, Inc., 643 F.3d 520, 533 (6th Cir.
2011).  According to Tennessee law, "a party in a civil action
may recover attorney fees" where "a contractual . . . provision
creates a right to recover [them]." Cracker Barrel Old Country

Store, Inc. v. Epperson, 284 S.W.3d 303, 308 (Tenn. 2009).  As there is no dispute as to the validity of the terms of the Branded Jobber Contract, the Court finds that BP is entitled to the reasonable attorneys' fees arising from the breach of the Branded Jobber Contract.  BP's previous calculation of attorneys' fees was filed with its Motion for Summary Judgment on September 13, 2012.  The Court also DIRECTS BP to include in its affidavit an updated total of reasonable attorneys' fees.

###    E.    POC Real Estate's Guarantee

For the reasons stated supra, Part II.A., it is undisputed that POC Real Estate "executed and delivered to BP an Unlimited Guaranty Agreement in which it unconditionally guaranteed payment of any and all obligations of Premier Oil to BP, including interest and attorneys' fees incurred collecting Premier Oil's debts." (Pl.'s Material Facts, ECF No. 30-1, ¶ 12.)  As a result of the guarantee, BP extended credit to Premier Oil, and thereafter demanded payment. (ECF No. 30 at 11; Pl.'s Material Facts, ECF No. 30-1, ¶¶ 12, 59.)  To support its assertion, BP cites the guarantee documents (ECF No. 30-12), the affidavit of Robert Ross (ECF No. 30-2 ¶ 26), Richard Rice's deposition testimony (Rice Dep., ECF No. 30-29 at PageID 474), and the invoices demanding payment (ECF No. 1-26; ECF No. 1-27).

The undisputed facts and the record as a whole indicate that POC Real Estate signed an unlimited guarantee which

guarantees "the payment of any obligation or part thereof" of
Premier Oil to BP, "whether such obligation now exists or is
incurred hereafter and in whatever form it may be evidenced and
agrees to pay all expenses (including attorneys' fees and legal
expenses) incurred by BP to collect the Debt and in enforcing
this Guaranty." (ECF No. 30-12 at PageID 348.) The Court finds
that BP has satisfied its burden in demonstrating that there is
no genuine issue of material fact as to POC Real Estate's
guarantee of Premier Oil's debt to BP. As a result, BP is
entitled to judgment as a matter of law. BP's Motion for
Summary Judgment for action on the guarantee of POC Real Estate
is GRANTED.

   The same affidavit ordered by the Court detailing Premier
Oil's debts and interest, see supra Part II.D., will be used to
determine POC Real Estate's liability under its guarantee.
Additionally, BP is DIRECTED to provide the Court with an
affidavit detailing its reasonable attorneys' fees incurred by
"collect[ing] the Debt and in enforcing the Guaranty."

## III. Request for Final Judgment

   In the instant Motion, BP also requests the Court enter
final judgment against Premier Oil and POC Real Estate. (ECF
No. 75 at 4-6.) Pursuant to Federal Rule of Civil Procedure
54(b), "when multiple parties are involved, the court may direct
entry of final judgment as to one or more . . . parties only if

the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Rule 54(b) "is not to be used routinely," however, "but should be used where an order terminates 'all issues presented in at least one claim [in a multiple claims action] so that nothing remains except enforcement by execution of the judgment.'" Local Union No. 1812, United Mine Workers of Am. v. BethEnergy Mines, Inc., 992 F.2d 569, 572 (6th Cir. 1993) (alteration in original) (quoting Rudd Constr. Equip. Co. v. Home Ins. Co., 711 F.2d 54, 56 (6th Cir.1983) (per curiam))

The Supreme Court has outlined a two-step test for courts to determine whether final judgment is appropriate under Rule 54(b):

> A district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 800 (1956)).

Once the first step in the Rule 54(b) analysis is satisfied, the court must determine whether there is "any just reason for delay" for entering final judgment on the individual claims, thereby allowing immediate appeal. Curtiss-Wright, 446

U.S. at 8.  The court's discretion in this inquiry should be

"exercised in the interest of sound judicial administration."

Id. (quoting Mackey, 351 U.S. at 437) (internal quotation marks

omitted).

The Sixth Circuit has identified a non-exhaustive list of

factors to consider when deciding whether a final judgment

should be entered:

> (1) the relationship between the adjudicated claim and
> the unadjudicated claims; (2) the possibility that the
> need for review might or might not be mooted by future
> developments   in   the   district   court;   (3)   the
> possibility that the reviewing court might be obliged
> to consider the same issues a second time; (4) the
> presence or absence of a claim or counterclaim which
> could result in set-off against the judgment sought to
> be   made   final;   (5)   miscellaneous   factors   such   as
> delay,   economic   and   solvency   considerations,
> shortening the time of trial, frivolity of competing
> claims, expense, and the like.

Pittman ex rel. Sykes v. Franklin, 282 F. App'x 418, 430 (6th

Cir. 2008) (quoting Corrosioneering, Inc. v. Thyssen Envtl.

Sys., Inc., 807 F.2d 1279, 1283 (6th Cir. 1986)) (internal

quotation marks omitted).

The first factor "favors certification when the claims are

'separate and independent so that the appellate court will not

have to consider the same issues again if a second appeal is

brought.'"  Genesis Fin. Solutions, Inc. v. Nat'l Capital Mgmt.,

LLC, 09-CV-02104-STA-CGC, 2011 WL 5553712 (W.D. Tenn. Nov. 15,

2011) (quoting Justice v. Pendleton Place Apartments, 40 F.3d

139, 141 (6th Cir. 1994)). In the instant case, the only claims against Premier Oil are breach-of-contract claims (see ECF No. 1 ¶¶ 49-73), and the only claim against POC Real Estate is for action on its guarantee (see id. ¶¶ 74-78). The remaining unadjudicated claims are against the individual Defendants Richard K. Rice and Kyle M. Rice on their respective guarantees, therefore the instant case is one of multiple parties and claims. An appellate court will not have to consider the same issues on successive appeals as each claim is specific to each party. Further, the grant of summary judgment as to the breach-of-contract claims and on the POC Real Estate guarantee is the "ultimate disposition" of those individual claims within the multiple-claims action. See Curtis-Wright, 446 U.S. at 7. The Court therefore finds the instant case is one of multiple parties and multiple claims and finds that BP has satisfied the first step in the Rule 54(b) evaluation.

BP argues that there is "no just reason for delay" in entering final judgment against Premier Oil as the remaining factors weigh in BP's favor. (ECF No. 75 at 4-6.) The Court must determine "the extent of Premier Oil's liability . . . separately from BP's claims against the other Defendants" and if final judgment is entered, "the amount of the debt owed to BP will be determined with finality, and the only remaining legal issues will concern the viability of the guaranties signed by

the other Defendants." (ECF No. 75 at 5.) BP asserts that
these determinations will "streamline the case remaining before
the Court." (Id.)

The Court agrees with BP. The second and third factors –
that "the need for review might or might not be mooted by future
developments in the district court" and the "possibility that
the reviewing court might be obliged to consider the same issues
a second time" – weigh in favor of entering final judgment.
Having granted summary judgment on the breach-of-contract
claims, there is no danger that an immediate appeal "might be
mooted by developments in the district court" on the remaining
claims. The remaining claims are separate and distinct as they
concern the guarantees of separate parties, not the contracts.
Likewise, there is no danger that the appellate court would have
to consider the issue of the breach-of-contract claims a second
time, as there are no other claims related to the Branded Jobber
Contract, the JOIP Agreement, or the CommLinx Agreement.
Entering final judgment against Premier Oil will allow immediate
appeal of this Court's finding of liability on the breach-of-
contract claims, and as there are no other similar claims in the
suit, there is no chance of the appellate court revisiting the
issue on a later appeal. As a result, the second and third
factors weigh in favor of entering final judgment under Rule
54(b).

The fourth factor, "the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final," weighs in favor of entering final judgment. In the instant case, there are no claims that would result in a "set-off" against a final judgment. Premier Oil is liable for the breach of its multiple contracts, and the damages that result, separately from the guarantees of POC Real Estate and the individual Defendants. Additionally, the terms of the guarantees state that "each guarantor is wholly responsible for the entire debt owed to BP." (ECF No. 75 at 5; ECF Nos. 30-10 to -12.) As a result, POC Real Estate's liability on its guarantee is unaffected by a finding of liability – or a finding of no liability – for the remaining individual Defendants. Further, there will be no set-off against the judgment as the entry of judgment against Premier Oil and POC Real Estate will not reduce the amounts owed by either company or by Richard K. Rice or M. Kyle Rice, nor would a later finding of liability as to Richard K. Rice and/or M. Kyle Rice reduce the amount owed by Premier Oil or POC Real Estate.

The fifth factor – miscellaneous considerations of judicial economy and administration – also weighs in favor of entering final judgment as determining liability now may shorten the time to trial for the remaining Defendants. Additionally, judicial economy will be served as it will streamline the issues before

the Court.

Recognizing that entry of final judgment is disfavored in most circumstances, and pursuant to Rule 54(b), the Court finds there is no just reason for delaying the entry of final judgment against Premier Oil and POC Real Estate.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds BP's Motion for Reconsideration is well-taken, and is therefore GRANTED.  On reconsideration, BP's Motion for Summary Judgment on its breach-of-contract claims against Premier Oil is GRANTED, and BP's Motion for Summary Judgment on POC Real Estate's guarantee of Premier Oil's debts is GRANTED.

Further, BP is DIRECTED to provide the Court with an affidavit with adequate detail setting forth the amount as of May 20, 2013, owed by Premier Oil on the contracts, the interest and finance charges accrued on each, and the reasonable attorneys' fees associated with the Branded Jobber Contract.  BP is also DIRECTED to provide the Court with an affidavit with adequate detail setting forth its reasonable attorneys' fees incurred collecting the debt and enforcing POC Real Estate's guarantee.

Finally, the Court finds that entry of final judgment against Premier Oil and POC Real Estate is appropriate under Rule 54(b).

**IT IS SO ORDERED**, this 7th day of May, 2013.

/s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE